UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| CHRISTA RENAE OFFUTT TURNER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.: 3:10-CV-76 |
| | ) | (VARLAN/GUYTON) |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM OPINION**

This social security case is before the Court on plaintiff Christa Renae Offutt Turner's Motion for Judgment on the Pleadings [Doc. 10] and the Motion for Summary Judgment [Doc. 13], filed by defendant Michael J. Astrue, Commissioner of Social Security ("the Commissioner"). In plaintiff's motion, she seeks judicial review of the decision by Administrative Law Judge William P. Newkirk (the "ALJ") denying her benefits, which was the final decision of the Commissioner [*see* Doc. 10].

On November 9, 2006, plaintiff filed an application for disability insurance benefits ("DIB") [Tr., p. 102]. On the application, plaintiff alleged a period of disability which began on June 23, 2006 [*Id.*, p. 102]. On April 21, 2009, the ALJ held a hearing and issued a decision finding plaintiff "not disabled." [*Id.*, pp. 25-46, 23]. On January 7, 2010, the Appeals Council denied plaintiff's request for review; thus, the decision of the ALJ became the final decision of the Commissioner [*Id.*, pp. 1-3]. Plaintiff now seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).

**I.     Findings of the ALJ**

The ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2011.

2. The claimant has not engaged in substantial gainful activity since June 23, 2006, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: chronic interstitial cystitis; fibromyalgia; arthritis (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift and/or carry ten pounds occasionally (up to one-third of the time), and less weight frequently in an eight-hour workday; to sit for approximately six hours in an eight-hour workday; and to walk and/or stand for no more than two hours in an eight-hour workday.

6. The claimant is capable of performing past relevant work as a chemical engineer. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7. The claimant has not been under a disability, as defined in the Social Security Act, from June 23, 2006 through the date of this decision. (20 CRF 404.1520(f)).

[Tr., pp. 15-23].

**II.     Disability Eligibility**

To qualify for SSI benefits, plaintiff must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. An individual

is eligible for SSI if he has financial need and he is aged, blind, or under a disability. *See* 42 U.S.C. § 1382(a). "Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A). An individual shall be determined to be under a disability only if his physical and/or mental impairments are of such severity that he is not only unable to do his previous work, but also cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis, summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

>4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
>5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520).

Plaintiff bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden of proof shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987).

### III. Standard of Review

In reviewing the Commissioner's determination of whether an individual is disabled, the Court is limited to determining whether the ALJ applied the correct legal standards and whether there is substantial evidence in the record to support the ALJ's findings. *Longworth v. Comm'r of Soc. Sec.*, 375 F.3d 387 (6th Cir. 2004). If the ALJ's findings are supported by substantial evidence based upon the record as a whole, they are conclusive and must be affirmed. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387 (6th Cir. 2004); 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th

Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). On review, plaintiff bears the burden of proving his entitlement to benefits. *Boyes v. Sec'y of Health & Human Serv.*, 46 F.3d 510, 512 (6th Cir. 1994) (citing *Halsey v. Richardson*, 441 F.2d 1230 (6th Cir. 1971)).

**IV. Analysis**

Plaintiff argues that: (1) the ALJ unreasonably afforded plaintiff's treating physician little weight; (2) the ALJ failed to properly analyze her allegations of disabling pain regarding her Interstitial Cystitis ("IC"); and (3) the ALJ failed to properly consider her IC under SSR 02-2p [Doc. 14, pp. 14-19].

    **A.    The ALJ's Treatment of Plaintiff's Treating Physician, Pamela A. Bridgeman, M.D.**

Plaintiff argues that substantial evidence does not support the Commissioner's denial of her disability claim because the ALJ failed to assign proper weight to the treating physician's opinion, Dr. Bridgeman [Doc. 10, p. 6].[1] Specifically, plaintiff argues that the

---

[1] Plaintiff argues in one sentence that the ALJ only gave passing reference to plaintiff's back pain when Dr. Bridgeman's treatment notes have "long referenced this severe impairment." [Doc. 10, p. 7]. The Court, however, agrees with the Commissioner's position that the ALJ pointed out that an MRI scan was performed on plaintiff, and Dr. Bridgeman opined that the MRI was mostly negative for back pain outside of fibromyalgia [Tr., p. 18]. The ALJ also found plaintiff's fibroyalgia to be a severe impairment and considered the objective medical evidence relating to back pain outside of this impairment. Accordingly, the Court is unpersuaded by plaintiff's argument.

ALJ failed to assign proper weight to Dr. Bridgeman's opinions concerning the disabling limitations of plaintiff's ongoing medical problems [*Id.*, p. 7]. The Commissioner argues that although Dr. Bridgeman was a treating physician, her opinions were inconsistent with the record as a whole [Doc. 14, p. 14].

If a treating physician's opinion as to the nature and severity of an impairment is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record, it must be given controlling weight. 20 C.F.R.§§ 404.1527(d)(2) and 416.927(d)(2). But where an opinion does not garner controlling weight, the appropriate weight to be given to an opinion will be determined based upon the following factors: length of treatment, frequency of examination, nature and extent of the treatment relationship, amount of relevant evidence that supports the opinion, the opinion's consistency with the record as a whole, the specialization of the source, and other factors which tend to support or contradict the opinion. 20 C.F.R.§§ 404.1527(d)(2) and 416.927(d)(2).

In certain situations, "opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of a treating or examining source." SSR 96-6p, 1996 WL 374180, at *3 (1996). "It is error to give an opinion controlling weight simply because it is the opinion of a treating source" when it is inconsistent with other substantial evidence of the record or it is not supported by clinical or laboratory technics. SSR 96-2p, 1996 WL 374188, at *2 (1996). When an ALJ does not give a treating physician's opinion controlling weight, the

ALJ must always give "good reasons" for the weight given to a treating source's opinion in the decision. 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2). A decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for the weight." Soc. Sec. Rul. 96-2p, 1996 WL 374188 at *5 (1996). Nonetheless, the ultimate decision of disability rests with the ALJ. *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984).

In this case, the ALJ discussed the opinions of Dr. Bridgeman at length. The ALJ noted that Dr. Bridgeman treated plaintiff's lower back pain, IC, fibromyalgia, pernicious anemia, and gastroesophageal reflux disease [Tr., p. 18]. The ALJ also addressed Dr. Bridgeman's April 2009 "Medical Source Statement of Ability to Do Work-Related Activities." [*Id.*, p. 19]. In this form, sent to Dr. Bridgeman by plaintiff's attorney, Dr. Bridgeman opined that, without breaks, plaintiff was limited to sitting for two hours, standing for fifteen to thirty minutes, and walking for ten to twenty minutes [*Id.*, p. 641]. In total, Dr. Bridgeman opined that with breaks, plaintiff could sit for three hours, stand for two hours, and walk for one hour out of an eight-hour day [*Id.*]. Despite finding such marked restrictions, Dr. Bridgeman stated that plaintiff could shop; travel without assistance; walk for a block at a reasonable pace on an uneven surface; use standard public transportation; climb a few steps at a reasonable pace using a handrail; prepare a simple meal and feed herself; care for her personal hygiene; and sort, handle, and use paper/files [*Id.*, p. 645].

7

Dr. Bridgeman's April 2009 evaluation of plaintiff's limitations is internally inconsistent with her opinion of the activities plaintiff was capable of performing. It is difficult to reconcile Dr. Bridgeman's opinion that plaintiff's limitations only allowed her to sit, stand, and walk for such short amounts of time, with her ability to perform the variety of activities indicated by Dr. Bridgeman. In addition, the treating physician's opinion is inconsistent with the consultative examining source opinion of Jeffrey Summers, M.D. Dr. Summers opined that plaintiff was capable of sedentary and low to moderate intensity level activities with regard to her fibromyalgia and commented that plaintiff's IC was "amenable to medical management." [Tr., p. 519]. The ALJ credited Dr. Summers's opinion and found that plaintiff was capable of sedentary work [*Id.*, p. 19]. Significantly, seven months before plaintiff alleged she became disabled, she reported that she needed to go to the bathroom eleven to fourteen times a day and twice at night [*Id.*, p. 415]. Plaintiff further claimed that she usually felt the urgent need to urinate shortly after urinating [*Id.*, p. 415]. Seventeen months after the she became disabled, while continuing treatment with Dr. Bridgeman, plaintiff reported on a form to the Institute of Pelvic Medicine that she had to urinate once a night and seven to ten times per day [*Id.*, p. 596]. She further noted that she only occasionally had an urgent need to urinate shortly after urinating, which only bothered her occasionally [*Id.*]. Moreover, at the hearing, plaintiff testified that going to the bathroom does not give her "a whole lot of trouble anymore." [*Id.*, p. 34]. Further, the issue only bothers her "a couple of days a year." [*Id.*, p. 35].

Further, Dr. Bridgeman noted that plaintiff was responding positively to Lyrica for treating her chronic pain [Tr., p. 679]. Plaintiff also noted that the Lyrica helped with her pain, but wished to stop using the medication because it was making her gain weight [*Id.*, p. 675]. After plaintiff discontinued Lyrica, she stated that her symptoms were worse off the medication, but wished to stay off the medication for her weight [*Id.*, p. 672]. Therefore, the ALJ's decision to credit Dr. Summers's opinion that plaintiff's IC was amenable to treatment is supported by substantial evidence.

Moreover, Dr. Bridgeman's assessment of plaintiff's limitations was inconsistent with the state agency reviewing physicians, Frank R. Pennington, M.D., and Robert Culpepper, M.D. Dr. Pennington opined that plaintiff was capable of occasionally lifting fifty pounds and frequently lifting twenty-five pounds, as well as walking, standing, or sitting for six hours out of an eight-hour day [Tr., p. 574]. Dr. Pennington further commented that there was no evidence of "the degree of restrictions and the pain alleged" by plaintiff [*Id.*, p. 578]. In addition, Dr. Culpepper reviewed the record indicating that plaintiff did not have any significant functional restrictions [*Id.*, p. 544]. While the ALJ credited the opinion of Dr. Summers, all three physicians' opinions were inconsistent with the marked limitations assessed by Dr. Bridgeman.

Significantly, Dr. Bridgeman's reports were based on plaintiff's subjective complaints of pain. Dr. Bridgeman opined that plaintiff's symptoms would flare up if she returned to work [Tr., p. 707]. The fear of increased symptoms, however, did not prevent plaintiff from engaging in optional activities such as redecorating her living room and shopping for

9

household items, clothing, gifts, and pet supplies [*Id.*, pp. 129, 138]. The Court will discuss plaintiff's other various daily activities in further detail below.

Accordingly, the Court finds that the ALJ's decision to discredit the opinion of plaintiff's treating physician, Dr. Bridgeman, was supported by substantial evidence.

**B.     Pain Analysis**

Plaintiff argues that the ALJ's residual functional capacity ("RFC") decision is not supported by substantial evidence due to his failure to perform a proper pain analysis [Doc. 10, p. 9]. Specifically, plaintiff argues that the ALJ failed to follow 20 C.F.F. § 404.1545(e) when assessing her allegations of disabling pain and other subjective complaints resulting from her IC [*Id.*, p. 9].[2] The Commissioner responds that the ALJ properly considered plaintiff's allegations of disabling pain and that plaintiff fails to cite medical evidence supporting her claim [Doc. 14, p. 17].

The regulations recognize that individuals who suffer from the same severe impairment may have different RFCs depending on pain or other symptoms that may cause a limitation on that individual's ability to function. 20 C.F.R. § 404.1545(e). "[T]olerance of pain is a highly individual matter and a determination of disability based on pain by necessity depends largely on the credibility of the claimant." *Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 367 (6th Cir. 1984). An ALJ has an "opportunity to observe

---

[2] The Court notes that plaintiff limits her argument to whether the ALJ fully considered the variety of problems associated with her IC. Therefore, the Court limits its analysis regarding the ALJ's assessment of plaintiff's pain to her IC.

the demeanor of the claimant" and, therefore, the determination of a claimant's credibility rests with the ALJ. *Gaffney v. Bowen*, 825 F.2d 98, 101 (6th Cir. 1987). "[A]n ALJ's credibility determinations about the claimant are to be given great weight." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007).

In the present case, the ALJ's decision to discount plaintiff's allegations of disabling pain caused by her IC is supported by substantial evidence. In his decision, the ALJ stated that:

> The claimant's statements concerning her impairment and their impact on her ability to work are not entirely credible in light of the claimant's own description of her lifestyle, the degree of medical treatment required, the reports of treating and examining practitioners, and the findings made on examination . . . the claimant's subjective complaints of disabling physical limitations do not correspond to the clinical and diagnostic medical evidence.

[Tr., p. 21].

While plaintiff cites 20 C.F.R. § 404.1545 as support for her argument, the ALJ followed dictates of this regulation in his decision. The ALJ discussed the medical evidence of record. As previously analyzed, the ALJ discussed Dr. Bridgeman's opinion, and ultimately discounted the opinion. The ALJ then discussed the opinions of the consultative examiner, Dr. Summer, and the two non-examining state agency medical consultants, Dr. Culpepper and Dr. Pennington. Therefore, ALJ considered the *medical* evidence of record when assessing her allegations of disabling pain, as required 20 C.F.R. § 404.1545. (emphasis added).

11

As set forth in 20 C.F.R. § 404.1545, an ALJ may also consider the *nonmedical* evidence when determining a claimant's limitations. (emphasis added). When assessing plaintiff's subjective complaints of pain, the ALJ considered her numerous and varied daily activities. While plaintiff claimed at the hearing that she was unable to lift more than two to three pounds without it causing too much pain, she also testified that she redecorated her living room [Tr., pp. 131, 108]. The redecoration project included plaintiff hanging curtain rods, pulling up and hauling away old carpet, and prepping her floors for workers [*Id.*, p. 107]. Plaintiff claimed that she was unaware how much effort the redecoration project would take when she started, however, the fact remains that she completed the project at the same time she was claiming total disability [*Id.*, p. 108]. Additionally, plaintiff performed additional activities at home such as sweeping, ironing, vacuuming, washing dishes, spraying weed killer on her lawn and doing light maintenance [*Id.*, p. 106].

Plaintiff also cared for her daughter by preparing her meals, driving her to school, and (sometimes) helping her with homework [Tr., p. 106]. Further, plaintiff tended to her fish by cleaning the fish tank and changing its water [*Id.*, p. 127]. Plaintiff cared for her dog by feeding it, bathing it, and taking it to the groomer [*Id.*, pp. 106, 127]. Plaintiff could also lift her dog, which weighed fifty pounds, and although she stated that this caused her pain to increase, the fact remains that she still was able to perform the task [*Id.*, pp. 40, 131]. Moreover, plaintiff cared for her personal needs. For instance, plaintiff admitted that she had no problem dressing, bathing, shaving, using the toilet, or caring for her personal needs [*Id.*,

p. 127]. Plaintiff also prepared much of her own food, including preparing and cooking two-course meals and making sandwiches five times a week [*Id.*, p. 106].

In addition, plaintiff was able to make numerous shopping trips a week. Plaintiff not only shopped for the essentials, but she also took optional shopping trips. Plaintiff shopped for groceries once a week and shopped for household items, clothing, gifts, and pet supplies twice a week [Tr. 129]. Plaintiff further explained that she spent more time than usual in stores because she was trying to "get decorating/color scheme ideas" for her living room remodeling [*Id.*, p. 138]. Plaintiff also noted that she would perform extra shopping trips if items that she bought "didn't quite work" and when her daughter did not like the clothes plaintiff bought for her [*Id.*]. On average, plaintiff stated that she shopped for groceries once a week for one hour, and performed other shopping twice a week for three to five hours [*Id.*, p. 129].

Accordingly, the Court finds that the ALJ properly considered plaintiff's allegations of disabling pain and that his determination was supported by substantial evidence.

### C. The ALJ's Failure to Seek Vocational Expert Testimony

Plaintiff argues that the ALJ erred by failing to seek vocational expert testimony despite her extensive documentation and complaints of limitations including pain, urinary frequency and urgency, as well as the residuals of medications, which are all non-exertional limitations [Doc. 10, p. 10]. The Commissioner responds that there was no need for the ALJ to call a vocational expert in this case because he found that plaintiff could return to her past work as a chemical engineer [Doc. 14, p. 13].

The ALJ's failure to obtain vocational expert testimony cannot be characterized as *per se* error. An ALJ may obtain evidence about the requirements of a claimant's past relevant work from many sources. The ALJ may ask the claimant regarding what was required from previous jobs, and he may "ask other people who know about [the claimant's] work." 20 C.F.R. §§ 404.1560(b)(2); 416.960(b)(2). An ALJ also "may use the services of vocational experts or vocational specialists, or other resources, such as the 'Dictionary of Occupational Titles'" for the information he needs to obtain evidence to help him determine if the claimant is capable of performing his past relevant work, in accordance with his RFC. *Id.* Significantly, however, an ALJ is not required to obtain vocational expert testimony. Clarification of Use of Vocational Experts, 68 Fed. Reg. at 51160.

In this case, the ALJ found that plaintiff was capable of performing her past relevant work. Plaintiff asserts that her need for bathroom breaks, residuals of pain, and medications, are non-exertional activities which necessitated the opinion of a vocational expert to determine whether she was capable of performing past relevant work. The ALJ's failure to obtain vocational expert testimony is not reversible error. As stated above, an ALJ may rely on other evidence regarding what a job requires. In this case, the ALJ asked plaintiff about the requirement of her desk job [Tr., pp. 29-31]. Plaintiff also admitted in a work history report that her desk job did not require her to exert herself more than the RFC set forth by the ALJ [*Id.*, p. 111]. The ALJ found that plaintiff had the RFC to perform her past relevant work working in the Special Studies Department at the Y-12 plant, which was a desk job [*Id.*,

14

pp. 29-31].³ To determine the requirements of plaintiff's desk job, the ALJ appropriately relied upon the Dictionary of Occupational Titles (the "DOT"). *See* 20 C.F.R. §§ 404.1560(b)(2); 416.960(b)(2) (stating that the DOT is an appropriate resource).

Moreover, Plaintiff testified at the hearing that her IC does not impact her need for bathroom breaks "a whole lot anymore." [Tr., p. 34]. Plaintiff further testified that her bathroom frequency is a problem "maybe a couple times a year." [*Id.*, p. 35]. Therefore, plaintiff's testimony disposed of the argument that the ALJ was required to obtain the testimony of a vocational expert regarding the impact of her urinary frequency.

Further, the ALJ questioned plaintiff extensively regarding her pain from medication at the hearing. Plaintiff stated that six out of her twelve prescribed medications caused side effects of tiredness, dizziness, diarrhea, or constipation [Tr., p. 44]. Plaintiff, however, noted that some of the twelve prescriptions were abandoned by her physicians and that she was "not sure [she] had any [medications] prescribed recently." [*Id.*]. Plaintiff also testified that she had not asked her physicians regarding the potential outcome if she stopped taking the medications that caused her side effects [*Id.*]. After a review of the record, however, it appears that Dr. Bridgeman would discontinue the use of a medication after plaintiff complained of an adverse side effect [*Id.*, pp. 693, 697, 699]. For example, on September

---

³ Plaintiff notes the skilled nature of her desk work and that her impairment makes it difficult to concentrate [Doc. 10, p. 11]. Yet, at the hearing, plaintiff testified that she no longer performed the duties of a chemical engineer at her desk job [Tr., p. 30]. Plaintiff, however, failed to discuss, with particularity, what special skill her desk job required at the hearing [*Id.*, pp. 30-31]. Further, the ALJ found that plaintiff only had mild limitation in the areas of concentration, persistence, and pace [*Id.*, pp. 16-17]. Therefore, plaintiff failed to present evidence regarding the skilled nature of her job.

15

2007, Dr. Bridgman discontinued plaintiff's use of Avinza after plaintiff complained that the medication made her tired and did not help the pain [*Id.*, p. 693]. Dr. Bridgeman also prescribed Pexeva for plaintiff, but took plaintiff off the medication when she complained that it irritated her bladder [*Id.*, p. 566].

In addition, Dr. Bridgman was willing to take plaintiff off medication even when such medication did not cause the adverse symptoms outlined by plaintiff at the hearing. Plaintiff asked Dr. Bridgeman to wean her off of Lyrica, because plaintiff thought "it ha[d] been a major factor in her weight gain." [Tr., p. 675]. Dr. Bridgman complied with plaintiff's request despite the fact that Lyrica appeared to be helping plaintiff's chronic pain [*Id.*, p. 679].[4] Therefore, the ALJ did not err by not obtaining vocational expert to testify about the residual effect of plaintiff's medications.

Also, as previously discussed, the ALJ properly considered and assessed plaintiff's complaints of pain, and substantial evidence supports his decision to discredit her allegations of pain.

Since plaintiff's non-exertional limitations were properly excluded from plaintiff's RFC determination, there was no need to obtain a vocational expert's opinion on the effects of those limitations on plaintiff's ability to work. At step four, plaintiff has the burden of proving that she could not return to her past relevant work, and therefore, the requirements

---

[4] Plaintiff argues that the ALJ failed to consider the adverse effect of her medication [Doc. 10, p. 12]. The Court notes, however, that Dr. Bridgeman took plaintiff off medications she claimed caused her adverse side effects. Thus, there is no evidence in the record or in the testimony offered at the hearing that plaintiff was currently suffering side effects from her medication.

of that work remained with plaintiff. *See Cruse*, 502 F.3d at 545 (citing *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). Accordingly, the ALJ did not commit reversible error by failing to obtain the opinion of a vocational expert.

**D. Social Security Ruling 02-2p**

Plaintiff argues that the ALJ failed to properly consider and apply SSR 02-2p [Doc. 10, p. 11]. The Commissioner responds that the ALJ properly considered plaintiff's claims of IC, as well as physicians who evaluated her limitations from that condition [Doc. 14, p. 18].

Social Security Ruling 02-2p provides direction for the Commissioner's policy regarding a claimant's disability based on the impairment of IC. According to SSR 02-2p, "[a]n assessment also should be made of the effect IC has upon the individual's ability to perform routine movement and necessary physical activity within a work environment." An ALJ who determines that a claimant suffers from IC must determine, "in accordance with the five-step sequential process, whether the impairment prevents the claimant from doing past relevant work or other work existing in substantial numbers in the national economy." *Jones v. Comm'r of Soc. Sec.*, 181 F. App'x 767, 769 (11th Cir. 2006).

Plaintiff argues that the ALJ failed to make the proper determinations about the limitations caused by her IC at steps three, four, and five of the sequential process. In this case, once the ALJ determined that one of plaintiff's severe impairments was IC, he proceeded with the sequential analysis and, thus, was consistent with SSR 02-2p. The ALJ considered the medical evidence regarding plaintiff's IC, but placed limitations on plaintiff's

17

ability to work in accordance with the opinion of Dr. Summers, finding that while she was limited in the amount of weight she could lift and in her abilities to sit, stand, and walk, plaintiff was still capable of sedentary work despite her IC.[5] While the ALJ does not specifically cite SSR 02-2p, the decision reflects that the ALJ considered it by discussing the impairment when determining her RFC. Therefore, the ALJ considered the impact of plaintiff's IC on her ability to work and properly incorporated the dictates of SSR 02-2p into his decision.

Further, plaintiff states that the ALJ failed to assess her chronic pain associated with IC. SSR 02-2p states that "many people with IC have chronic pelvic pain, which *can* affect the ability to focus and sustain attention on the task at hand." (emphasis added). Not every claimant suffering from IC will experience the inability to focus on the task at hand, and the Court discussed *supra*, that the ALJ discredited plaintiff's subjective complaints of disabling pain. In addition, the ALJ noted that plaintiff only had mild limitation in the ability to concentrate [Tr., pp. 16-17]. Thus, the ALJ discussed and considered plaintiff's complaints of pain associated with her impairments and discredited those allegations.

---

[5] Plaintiff argues that Dr. Summer "does not describe how he examined [her] with regard to the [IC]," and, therefore, could not provide a basis for his statement that the Plaintiff's examination for IC was "unremarkable." [Tr., pp. 10-11]. While the Court notes that IC is a diagnosis of exclusion and that there is not one test for the disease, Dr. Summers indicated that he reviewed plaintiff's medical records and examined plaintiff, and concluded that while she suffered from IC, the condition "ha[d] been treated with medications with fair results." [*Id.*, p. 519]. Thus, Dr. Summers opined that plaintiff's IC would be amendable to treatment, and did not merely state that plaintiff's examination for IC was "unremarkable." [*Id.*].

Moreover, SSR 02-2p recognizes that "fatigue *may* affect the individual's physical and mental ability to sustain work activity . . . [and] may be particularly true in cases involving urinary frequency." (emphasis added). In this case, as discussed previously, plaintiff testified at the hearing regarding her urinary frequency does "not [bother her] a whole lot anymore." [Tr., p. 34]. Additionally, plaintiff reported at the hearing that her bathroom frequency is a problem "maybe a couple of days a year." [*Id.*, p. 35]. Plaintiff also stated "[t]here are days, though, when I have to go at least double, triple what other people do. There aren't a lot of days like that, though." [*Id.*, p. 34]. Therefore, plaintiff dismissed the issue of urinary frequency at the hearing, and the potential side effects associated with urinary frequency in her testimony. Moreover, as previously discussed, there is no evidence from plaintiff's medications or her daily activities that she suffered disabling fatigue.[6]

Therefore, the Court finds that the ALJ's decision properly considered plaintiff's IC, as well as the physicians who evaluated her limitations from that condition. Accordingly, the Court finds that the ALJ properly considered plaintiff's IC under SSR 02-2p.

---

[6] When arguing that the ALJ failed to follow SSR 02-2p, plaintiff contends that the ALJ failed to recognize her difficulty in using her hands [Doc. 10, p. 12]. Plaintiff points to no evidence in the record supporting this argument. However, the ALJ discussed plaintiff's treatment regarding her hands by an orthopedist, Ronald J. French, Jr., M.D. [Tr., pp. 18-19]. The ALJ also noted that Dr. Bridgeman opined that plaintiff suffered from osteoarthritis [*Id.*, p. 19]. The ALJ recognized arthritis as a severe impairment in this case, indicating that he considered plaintiff's difficulty in using her hands.

## V. Conclusion

For the foregoing reasons, plaintiff's Motion For Judgment on the Pleadings [Doc. 10] will be **DENIED** and the Commissioner's Motion for Summary Judgment [Doc. 13] will be **GRANTED**. Defendant Commissioner's decision in this case denying plaintiff's application for benefits will be **AFFIRMED** and this case **DISMISSED**. The Clerk of Court will be **DIRECTED** to close this case. An appropriate order will be entered.

ORDER ACCORDINGLY.

s/ Thomas A. Varlan  
UNITED STATES DISTRICT JUDGE